VERA WHATLEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Whatley v. Commissioner
Docket No. 17177-82.
United States Tax Court
T.C. Memo 1984-444; 1984 Tax Ct. Memo LEXIS 229; 48 T.C.M. (CCH) 912; T.C.M. (RIA) 84444; August 20, 1984. Vera Whatley, pro se. Roslyn D. Grand, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined a deficiency in petitioner's 1978 Federal income taxes in the amount of $1,289.00. After concessions, the issues for decision are (1) whether assessment and collection of the deficiency is barred by the statute of limitations; (2) whether petitioner is entitled to a deduction for moving expenses under section 217(a); [1] (3) whether petitioner is entitled to a charitable contribution deduction under section 170(a)(1); and (4) whether petitioner is entitled to a residential energy credit under section 44C(a)(1). *232 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner, a cash basis calendar year taxpayer, resided in Thomaston, Georgia, when she filed her individual Federal 1978 income tax return on February 2, 1979, and her amended individual Federal 1978 income tax return on July 20, 1980. Petitioner also resided in Thomaston, Georgia, when she filed her petition in this case. Respondent, in his notice of deficiency issued on April 13, 1982, disallowed deductions for moving expenses and charitable contributions and a residential energy credit claimed by petitioner on her amended return. Petitioner was employed by the Aldora Division of The General Tire and Rubber Co. during 1978. Petitioner initially worked in Barnesville, Georgia, but was transferred by her employer to Thomaston, Georgia, for a three-month period during 1978. The distance between Barnesville and Thomaston is approximately 20 to 25 miles. At the time she was transferred to Thomaston, petitioner lived in a rented house in Barnesville. While working in Thomaston, petitioner moved to a *233 furnished apartment in Thomaston. Subsequently, petitioner's employer reassigned her to Barnesville, but she continued to live in Thomaston. OPINION We must first consider petitioner's claim that the notice of deficiency was not sent within the limitation period prescribed by section 6501(a). Section 6501(a) states that, "[e]xcept as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed * * *". Section 6501(b)(1) provides, in pertinent part, that "a return of tax imposed by this title * * * filed before the last day prescribed by law * * * shall be considered as filed on such last day." The last day prescribed by law for filing the Federal individual income tax return of a calendar year taxpayer is April 15th of the year following the close of the calendar year for which the return is made. Sec. 6072(a). If this date falls on a Saturday, Sunday, or legal holiday, the last day for filing shall be the next succeeding day which is not a Saturday, Sunday, or legal holiday. Sec. 7503. In the instant case, petitioner filed her 1978 income tax return on February 2, 1979. However, for purposes *234 of determining the three-year limitation period for assessment of the tax, petitioner is deemed to have filed this return on April 16, 1979. [2] Respondent issued the notice of deficiency on April 13, 1982, which was within three years after the date petitioner's 1978 income tax return was filed. Consequently, respondent's notice of deficiency was timely. As a preliminary matter, we must next consider the admissibility of the exhibits offered by petitioner to support her claims. These include the following: 1. A photocopy of an invoice purportedly from Crown Energy Care Inc., allegedly obtained from the possession of Crown Energy Care Inc. 2. A photocopy of a receipt purportedly from AMVETS National Service Foundation (hereinafter "AMVETS"), allegedly obtained from the possession of AMVETS. [3]
3. A photocopy of a letter purportedly from Jimmy Lyons, Aldora Mills supervisor, regarding petitioner's employment transfers, allegedly obtained from the possession of Jimmy Lyons. *235 In determining questions of evidence, this Court is governed by "the rules of evidence applicable in trials without a jury in the United States District Court for the District of Columbia." Sec. 7453; Rule 143(a). The Federal Rules of Evidence apply to trials in the U.S. District Court of the District of Columbia. Rule 1101(a) of Federal Rules of Evidence.Rule 901 of Federal Rules of Evidence provides, in pertinent part: (a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. In the instant case, petitioner did not state that she had personal knowledge that the enumerated documents were authentic. Nor did she produce any other witness to so testify, or sufficiently authenticate or identify the documents by any other method. See Rule 901(b), Federal Rules of Evidence. Under these circumstances, there are not sufficient indicia of authenticity to permit the introduction of these documents into evidence. [4]
*236 We must next consider the issue of whether petitioner is entitled to a deduction for moving expenses under section 217(a) and charitable contributions under section 170(a)(1) for 1978. Deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). Respondent's determinations are presumptively correct, and the burden of proof rests with petitioner. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Section 217(a) allows a deduction for moving expenses paid by a taxpayer in connection with commencement of work by the taxpayer as an employee at a new principal place of work. Section 217(c), prescribing the conditions for allowance of a deduction for moving expenses, provides in pertinent part: (c) CONDITIONS FOR ALLOWANCE.--No deduction shall be allowed under this section unless-- (1) the taxpayer's new principal place of work-- (A) is at least 35 miles farther from his former residence than was his former principal place of work, * * * and (2) either-- (A) during the 12-month period immediately following his arrival in the general location of his new principal place of work, the taxpayer *237 is a full-time employee, in such general location, during at least 39 weeks, or (B) during the 24-month period immediately following his arrival in the general location of his new principal place of work, the taxpayer is a full-time employee or performs services as a self-employed individual on a full-time basis, in such general location, during at least 78 weeks, of which not less than 39 weeks are during the 12-month period referred to in subparagraph (A). However, section 217(c)(2) shall not apply if the taxpayer is transferred from his new principal place of work for the benefit of an employer after obtaining full-time employment in which he could have reasonably expected to satisfy the conditions of section 217(c)(2). Sec. 217(d)(1)(B). In the instant case, petitioner has not met her burden of showing that she satisfies the conditions for allowance of a deduction for moving expenses under section 217(c). Clearly, petitioner fails to meet the conditions of section 217(c)(2), as she was transferred from Thomaston, her new principal place of work back to Barnesville three months after her arrival at Thomaston. However, under section 217(d)(1)(B), the condition in section *238 217(c)(2) does not apply in certain circumstances where an employee is transferred subsequent to a move to a new principal place of employment. Petitioner testified that she anticipated that her assignment at Thomaston would be for a period of one year and that her employer subsequently transferred her to Barnesville. Although petitioner's testimony as to this matter was uncontradicted at the trial of this case, we observed petitioner's demeanor at trial and find that her testimony as a whole is not credible. Consequently, we do not accept petitioner's testimony as fact. Petitioner presented no other evidence to support a finding that section 217(d)(1)(B) applies in this instance, and we conclude that petitioner has failed to meet her burden of proving that she has met the condition of section 217(c)(2). Further, petitioner did not meet her burden of proving that she satisfies the condition of section 217(c)(1), since she did not introduce any evidence to establish the distance between her new principal place of work and her former residence. In addition, petitioner has offered no credible evidence to support her claim that she paid moving expenses in the amount of $1,500.00 *239 during 1978. Petitioner presented a receipt purportedly showing that she had paid $1,000.00 for moving costs between Barnesville and Thomaston. The receipt for moving costs was signed by Hubert L. Hartsfield ("Hartsfield"), now petitioner's husband. Hartsfield testified that he assisted another man in making three trips in a pick-up truck to move furniture and personal items belonging to petitioner and her child from Barnesville to Thomaston. Hartsfield also testified that petitioner paid $1,000.00 cash to the man Hartsfield assisted for these moving services. We find it highly improbable that petitioner would expend $1,000.00 to move three pick-up truck loads of furniture and personal items a distance of 25 miles. Hartsfield's testimony and the moving receipt do not persuade us otherwise. Hartsfield is petitioner's husband and is clearly not a disinterested witness. [5] Some of Hartsfield's testimony at trial appeared to be nothing more than a rehearsed dialogue with petitioner. At other times, Hartsfield appeared to be confused as to the events which occurred. *240 Additionally, petitioner has not submitted sufficient evidence to support her claim that she made a charitable contribution in the amount of $3,500.00 to AMVETS in 1978. [6] Petitioner testified that the contribution was arranged through Minister Hickman ("Hickman") and that she had no personal knowledge of the circumstances surrounding the purported contribution. Petitioner did testify that she was notified that a contribution was made when Hickman brought her a receipt. Hickman did not testify at the trial of this case. *241 On the basis of this record, we find that petitioner has failed to satisfy her burden of overcoming the presumptive correctness of respondent's determination that petitioner is not entitled to a deduction for moving expenses and charitable contributions in 1978. Finally, we must consider the issue of whether petitioner is entitled to claim a residential energy credit under section 44C(a)(1) for 1978. Petitioner has the burden of proving that this credit is allowable. Rule 142(a). Section 44C(a)(1) provides that an individual taxpayer shall be allowed a credit for qualified energy conservation expenditures. Qualified energy conservation expenditures are expenditures for insulation or any other energy-conserving component. Sec. 44C(c)(1). Other energy-conserving components include storm windows or doors and caulking. Sec. 44C(c)(4)(A). Additional requirements are imposed by the statute and by the Secretary of the Treasury under the authority of the statute. Sec. 44C(c)(3) and 44C(c)(4)(B), (C), and (D). In the instant case, petitioner claims that she made qualifying expenditures in the amount of $2,075.00 for insulation, storm windows and doors, cellulose window shields, *242 and caulking in 1978. Petitioner offered no evidence to show that the expenditures meet the statutory tests for qualification. [7] Moreover, petitioner's testimony at trial indicates that it is highly unlikely that she would be able to expend $2,075.00 for insulation or other energy-conserving components. Consequently, we do not find petitioner's testimony as to the qualified energy conservation expenditures as fact. On the basis of this record, we find that petitioner has failed to satisfy her burden of overcoming the presumptive correctness of respondent's determination that petitioner is not entitled to a residential energy credit in *243 1978. In conclusion, we would be remiss not to state that we have found petitioner's claims and the testimony and documentation she offered to this Court to be totally fabricated and permeated with a strong aroma of fraud and perjury. Only our compassion for the obvious ignorance and disadvantaged circumstances of petitioner precludes our taking further action on this account, but it must be said that we will not further tolerate such blatant fabrication and obviously untruthful testimony before this Court. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. April 15, 1979, fell on a Sunday. Under sec. 7503, the last day for filing was Monday, April 16, 1979.↩
3. Petitioner also submitted a schedule of items allegedly received by AMVETS on Sept. 20, 1978, for the Church Barter Club Action Place. This schedule does not contain any reference to petitioner and has no probative value whatsoever. In addition, the parties have stipulated that petitioner has no list of items which she claims to have donated to AMVETS other than the list on the receipt. Pursuant to Rule 91(e), a stipulation shall be treated as a conclusive admission by the parties unless otherwise permitted by the Court or agreed by the parties. In the instant case, there is no agreement by the parties and, under the circumstances of this case, we will not permit petitioner to introduce evidence to contradict the stipulation.↩
4. These documents suffer additional evidentiary infirmities. For example, all of these documents are hearsay under the definition of Rule 801(c) of Federal Rules of Evidence, and petitioner has not otherwise shown that the documents fall within any of the enumerated exceptions to Rule 802 of Federal Rules of Evidence↩ which provides that hearsay is not admissible.
5. "[I]t is well established that the Tax Court is not bound to believe even uncontradicted testimony of interested parties where the testimony appears highly improbable." MacGuire v. Commissioner,450 F.2d 1239, 1244↩ (5th Cir. 1971).
6. Petitioner submitted a document which she claims is a copy of the receipt retained by AMVETS acknowledging a charitable donation. As discussed, supra,↩ this receipt was not sufficiently authenticated and is not admissible in evidence. In addition, the testimony of Paul Jerry Parfitt ("Parfitt"), vice president and general manager of AMVETS Thrift Stores, Atlanta, Georgia, supports a finding that the receipt was not authentic. The receipt was signed by George T. Cowan, driver, and indicated that the value of the items received was $3,500.00. Parfitt testified that AMVETS' records indicated that no individual by the name of George T. Cowan was employed by AMVETS in 1978. Parfitt also testified that it is not the policy of AMVETS to indicate the value of items donated on the receipt, and that it is not the policy of AMVETS to retain records of its receipts. Parfitt's testimony was unimpeached.
7. Petitioner submitted a document which she claims is a copy of an invoice for qualified energy expenditures from Crown Energy Care Inc. As discussed, supra,↩ this invoice was not sufficiently authenticated and is not admissible in evidence. In addition, petitioner's testimony contradicts the information provided in the invoice. Petitioner testified that she made these expenditures prior to her mother's death and that her mother died in 1977. However, the invoice clearly indicates that work was not commenced until January 10, 1978.